IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Natasha B. C.,[1] | ) | Case No.: 4:23-cv-5473-SAL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Michelle King, Acting Commissioner of | ) | **OPINION AND ORDER** |
| Social Security Administration,[2] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

This matter is before the court for review of the December 3, 2024 Report and Recommendation of United States Magistrate Judge Thomas E. Rogers, III (the "Report"), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (D.S.C.). [ECF No. 18.] In the Report, the magistrate judge recommends the Commissioner's final decision denying Plaintiff's claim for Supplemental Security Income be affirmed. *Id.* Plaintiff filed timely objections to the Report. [ECF No. 19.] Defendant filed a timely reply to Plaintiff's objections. [ECF No. 23.] Plaintiff filed a timely sur reply to the Commissioner's reply. [ECF No. 25.] For the reasons outlined below, the court adopts the Report as modified herein and affirms the Commissioner's final decision.

**STANDARD OF REVIEW**

The scope of federal court review under 42 U.S.C. § 405(g) is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Michelle King was named as Acting Commissioner on January 20, 2025. Pursuant to Fed. R.

*See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence" is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (quoting *Consolidated Edison*, 305 U.S. at 229).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## REVIEW OF A MAGISTRATE JUDGE'S REPORT

The magistrate judge makes only a recommendation to the court. The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge, or recommit the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(1). Without specific objections to portions of the Report, this court need not explain its reasons for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir.

---

Civ. P. 25(d), she is substituted as a party to this action.

1983). It must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins.*, 416 F.3d 310, 316 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

## DISCUSSION

The Report sets forth the administrative proceedings and applicable law, which the court incorporates herein without a full recitation. [ECF No. 18.] Briefly, following a hearing, the ALJ found Plaintiff had severe impairments of spine disorders, respiratory disorders, obesity, Adie's pupil syndrome, borderline intellectual function, and affective disorder and anxiety disorder. *See id.* at 2. The ALJ concluded Plaintiff had a residual functional capacity to perform sedentary work with additional limitations. *Id.* at 3 (detailing exertional, postural, and other limitations). As a result, Plaintiff was unable to perform any of her past relevant work, but, considering her age, education, and work experience, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* at 3. Thus, the ALJ concluded Plaintiff had not been under a disability since the date of her application in August 2020.

Plaintiff objects to the magistrate judge's findings that the Acting Commissioner met her burden of showing that there were a significant number of jobs in the national economy that Plaintiff could perform. Given the specificity of Plaintiff's objections, the court reviews them de novo.

Plaintiff's arguments are essentially twofold: the number of jobs testified to by the vocational expert ("VE") was inaccurate, as significantly fewer jobs were reflected in job number data from Job Browser Pro/SkillTRAN ("Job Brower Pro"); and the Commissioner has failed to meet her burden to show a significant number of jobs existed for an individual with Plaintiff's residual functional capacity ("RFC"). *See generally* ECF No. 19.

The court considers the procedural history noteworthy. During the hearing, the VE testified that an individual of Plaintiff's vocational profile with the described RFC could perform jobs as touch up screeners, document preparers, and ampoule sealers. Tr. at 62–63. He reported that there are 12,000 positions as touch up screeners, 90,000 positions as document preparers, and 25,000 positions as ampoule sealers in the national economy. *Id.* A review of the hearing transcript reveals that neither the administrative law judge ("ALJ") nor Plaintiff's counsel questioned the source from which the VE derived the job numbers provided. *See* Tr. at 59–65. The ALJ subsequently issued a decision relying on the VE's testimony regarding the number of available jobs in the representative occupations to conclude Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and thus was not disabled. Tr. at 34. Following the ALJ's decision, Plaintiff's counsel submitted to the Appeals Council a Job Browser Pro report that estimated the existence of 1,072 touch up screener positions, 15,661 document preparer positions, and 646 ampoule sealer positions in the national economy. Tr. 385–93.

Plaintiff presented the arguments identified above in her brief, but also argued that an apparent conflict existed between the RFC assessment and the description of the job of document preparer in the *Dictionary of Occupational Titles* ("*DOT*"). The Commissioner conceded the apparent conflict. Therefore, the magistrate judge excluded the number of document preparer positions identified in evaluating whether the ALJ erred at step five. [ECF No. 14 at 18.]

The court must now assess whether the two remaining jobs—touch up screener and ampoule sealer—existed in significant enough numbers to support the ALJ's step-five finding. At step five, the ALJ evaluates the RFC assessment, along with the claimant's age, education, and work experience to determine whether an adjustment to other work is possible. 20 C.F.R. § 416.920(a)(4)(v). "[T]he Commissioner bears the burden to prove that the claimant is able to

perform alternative work." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). ALJs rely on VEs to determine whether claimants can transfer their skills to other jobs and to identify specific occupations that match their qualifications. SSR 00-4p, 2000 WL 1898704, at *2 (2000); 20 C.F.R. § 416.966(e). "In order to support a finding that [a claimant] is not disabled at this fifth step of the sequential evaluation process, [the ALJ is] responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [her] residual functional capacity and vocational factors. 20 C.F.R. § 416.960(c)(2). "Work exists in the national economy where there is a significant number of jobs (in one or more occupations) having requirements which [the claimant] is able to meet with [her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(b).

Plaintiff maintains the magistrate judge erred by concluding the job numbers provided by Job Browser Pro were unreliable. [ECF No. 19 at 3.] She argues Job Browser Pro "culls information from the *DOT*, county business patterns, census reports, occupational analysis, and the [Occupational Outlook Handbook]" and that the sources from which it draws information are considered by the Commissioner to be reliable sources of information pursuant to 20 C.F.R. § 416.966(d). *Id.* (quoting *Collins v. Berryhill*, C/A No. 3:17-cv-633 (MHL), 2018 WL 4232888, at *11 (E.D. Va. Aug. 20, 2018)).

But contrary to Plaintiff's argument, the magistrate judge did not categorically reject Job Browser Pro data as unreliable. Instead, the magistrate judge distinguished this case from *Grigsby v. Kijakazi*, C/A No. 2:21-1553-TLW-MGB, 2022 WL 3088558, at *12–14 (D.S.C. July 14, 2022), *adopted by* 2022 WL 3086494 (Aug. 2, 2022). In *Grigsby*, the plaintiff declined to question the VE during the hearing about job numbers but later submitted conflicting data to the Appeals Council. *Id.* The *Grigsby* court acknowledged that a plaintiff could challenge VE

testimony by probing the expert's sources and methodology, including citing data from Job Browser Pro. *Id.* at *13. The magistrate judge in the current case misinterpreted *Grigsby* in concluding that Job Browser Pro data could not serve as a valid basis for challenging VE testimony because it is not a source explicitly listed under § 416.966(d)." [ECF No. 18 at 8–9.] In fact, the *Grigsby* court specifically recognized Job Browser Pro as an acceptable source of data for this purpose. *Id.* at 13–14.

 Job Browser Pro compiles data from primary sources recognized by the Social Security Administration and has been cited as reliable by both the SSA and multiple courts, including this one. *See* 20 C.F.R. § 416.966(d) (noting sources from which the agency will take administrative notice of reliable job information); *see also Collins*, 2018 WL 4232888, at *11 (referencing Memorandum from Susan Swansiger, Dir., Div. of Field Procedures, SSA, to Reg'l Mgmt. Officers (Dec. 28, 2009) (listing Job Browser Pro as an acceptable version of the *DOT* and stating the program met the requirements of SSR 00-4p) and finding "the VE properly relied on data that she retrieved from Job Browser Pro"); *Chavez v. O'Malley*, 96 F.4th 1016, 1023 (7th Cir. 2024); *White v. Kijakazi*, 44 F.4th 828, 837 (9th Cir. 2022); *Grigsby* 2022 WL 3088558, at *14 (D.S.C. July 14, 2022), *adopted by* 2022 WL 3086494.

But the reliability of Job Browser Pro as a source for VE calculations does not mean raw data from Job Browser Pro, without expert interpretation, is inherently reliable. As noted by the magistrate judge, the Social Security Administration has expressly cautioned it does not specifically endorse the proprietary algorithm used by SkillTRAN, the developer of JOB Browser Pro. The SSA further advises ALJs not to take administrative notice of SkillTRAN data added after the DOT was last updated in 1991. [ECF No. 18 at 9 n.6 (citing SSA Emergency Message EM-21065 REV).]

6

Plaintiff claims the magistrate judge erred in finding she had not shown good cause for failing to present the Job Browser Pro data before the ALJ's decision. She contends the Appeals Council accepted and exhibited the data without citing a lack of good cause for its late submission and merely stated it "found no reason under [the Commissioner's] rules" to review the ALJ's decision. [ECF No. 19 at 4.] The court recognizes the Appeals Council did not exclude the Job Browser Pro data provided by Plaintiff, as it was included in counsel's brief. Tr. at 1, 4. Moreover, the Appeals Council did not specifically find Plaintiff had failed to demonstrate good cause for the delayed submission. Even so, as the magistrate judge correctly noted "SSA guidance treats legal argument submissions to the Appeals Council different than evidence submissions." [ECF No. 18 at 10 n.7.] Because the Job Browser Pro data was attached to a legal argument submission, the Appeals Council could not reject it in the same way it could reject new evidence. Still, the Appeals Council expressly stated it had considered the reasons Plaintiff disagreed with the ALJ's decision and found they did not provide a basis for changing the ALJ's decision. In other words, the Appeals Council concluded the Job Browser Pro data was not probative.

In *Wischmann v. Kijakazi*, 68 F.4th 498, 506–07 (9th Cir. 2023), the Ninth Circuit considered a situation similar to that presented here. It concluded the claimant had not submitted probative evidence to the Appeals Council where he submitted Job Browser Pro data that was inconsistent with the VE's estimates but did not indicate that data was "produced using the same methodology as that used by the VE." *Id.* The court wrote:

> The letter states only that Job Browser Pro produced a lower number of positions available nationally . . .. But the letter provides no information about how the job numbers were produced, other than the name of the software program used. A software program, however, is merely a tool that must be used appropriately to produce reliable results. Given that SkillTRAN's Job Browser Pro software is meant to assist a VE in performing a complex matching exercise of various sources of information from official and private sources . . . experience in using

the program and interpreting the output would ordinarily be necessary to produce probative results. But the letter does not state who produced the outputs—whether a VE with expertise in developing job numbers or the attorney himself, who has "no identified expertise in calculating job figures in the national economy." *Kilpatrick* [*v. Kijakazi*], 35 F.4th [1187,] 1194 [(9th Cir. 2022)]. Nor does the letter establish that the attorney replicated a methodology that was set forth by the VE at the hearing. In addition, the letter provides no information about what queries were entered into the computer program, what variables were changed, or what filters were applied to the data. Nor does the letter state which version of the program was used, so we do not know whether the information used by the program was current or out of date. *See id.* (noting that where the claimant's attorney used "data that was roughly seven years old at the time" to calculate the job-number estimates, "there [were] obvious reasons to question [the] methodology").

Nor do the six pages of attached printout support the letter's assertions. Neither the letter nor the pages themselves state that the printout data was produced with Job Browser Pro. The raw data set out on these pages . . . is not comprehensible to a lay person, and Wischmann does not provide the interpretation necessary to make the pages meaningful to a court . . . .

*Id.* at 507.

Here, counsel's letter to the Appeals Council merely states "[a]ccording to Job Browser Pro only 1072 touch-up screener jobs, only 15661 document preparer jobs, and only 646 ampoule sealer jobs exist in the national economy. (*See* Attached)." Tr. at 379. The attached data shows it was a "[r]eport produced from SkillTRAN Online Services" and "shows employment at the Full-Time level of the year 2023." Tr. at 385–93. It is unclear, however, "who produced the outputs," "what queries were entered into the computer program, what variables were changed, or what filters were applied to the data." *See Wischmann*, 68 F.4th at 507. These factors are particularly relevant as reflected in the SSA emergency message cited by the magistrate judge in a footnote. *See* ECF No. 18 at 9 n.6 (citing SSA Emergency Message EM-21064 REV) ("Those with vocational expertise use various approaches to arrive at informed estimates of numbers of jobs that exist within a *DOT* occupation. Results may differ given the method used for the estimate."). The data also lacks interpretation from a qualified expert. The court finds persuasive

the Ninth Circuit's reasoning in *Wischmann* and concludes the Appeals Council did not err in declining to remand the case or in finding the Job Browser Pro data failed to provide a basis for changing the ALJ's decision in absence of further information and explanation.[3]

The magistrate judge, citing *Biestek,* 587 U.S. at 105, correctly noted the Supreme Court has held that a VE's testimony may serve as substantial evidence even in the absence of supporting data. In *Biestek*, the court explained that although "an applicant may probe the strength of testimony by asking an expert about (for example) her sources and methods," "even without significant testing, a factfinder may conclude that testimony has sufficient indicia of reliability." *Id.* at 107. Given this authority, the magistrate judge reasonably concluded the VE's "over twenty-five years of experience, three degrees, several credentialed certifications, both academic and non-academic job experiences, uncountable conference, seminar, and workshop presentations, ten published books from 2022 to 2005, numerous peer-reviewed journal articles, book chapters, awards, committee service, university service, and community service, and four monographs from 2021 to 1983" allowed "the ALJ [to] reasonably rely upon [his] testimony in meeting the . . . burden at Step Five." [ECF No. 18 at 11.]

Plaintiff argues the ALJ failed to find the job numbers reflected in the Job Browser Pro data constituted significant numbers. [ECF No. 19 at 5.] This argument lacks merit. As the magistrate judge noted, Plaintiff "did not question the VE's qualifications or the source of his job numbers" at the hearing nor present the Job Browser Pro numbers to the ALJ after the hearing though several months passed before the ALJ issued his decision. [ECF No. 18 at 9–10.] As a

---

[3] The court recognizes this finding presents a departure from the court's finding in *Grisby* but notes the court in *Grigsby* did not consider factors relevant to the probative value of the data and its decision conflicts with this court's action in *Gerald v. Kijakazi*, C/A No. 6:20-cv-3446-BHH-KFM, 2021 WL 8014692, at *13 (D.S.C. Oct. 27, 2021), *adopted by* 2022 WL 669626 (Mar. 27, 2022).

result, the ALJ had no opportunity to address whether the job numbers in the Job Browser Pro data constituted "significant numbers."

Plaintiff also asserts the magistrate judge erred in finding that the Job Browser Pro data sufficiently supported the Commissioner's burden of proving Plaintiff's RFC allowed her to perform a significant number of jobs in the economy. [ECF No. 19 at 4–5.] The magistrate judge noted in a footnote that "[e]ven if Plaintiff's statement of job numbers were accepted, those numbers would still be a 'significant number.'" [ECF No. 18 at 8 n.5.] That said, as discussed above, the raw numbers presented lacked sufficient indicia of reliability. Having determined the magistrate judge reasonably concluded the Job Browser Pro data was not probative, the court declines to address whether the numbers meet the regulatory definition of "significant numbers." Instead, the court considers only whether the number of jobs identified by the ALJ satisfies the regulatory standard.

Plaintiff contends that even if the VE's job numbers are credited, they are not "significant numbers." [ECF No. 19 at 7.] She cites *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309 (11th Cir. 2021), and argues that, because the ALJ relied on the combined total of jobs from all three job descriptions in concluding a significant number of jobs existed, it is unclear whether he would have reached the same conclusion without including the number of document preparer positions. *Id.*; *see also* ECF No. 25 at 5–7. She further argues the ALJ failed to consider the relevant factors outlined by the Tenth Circuit in *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004), before concluding that a significant number of jobs existed. *Id.* Additionally, she maintains the Fourth Circuit has not specifically held 37,000 jobs in the national economy qualify significant numbers.

In *Viverette*, 13 F.4th at 1317–18, the court concluded, based on the record before it, that remand was necessary because it found an apparent conflict between the *DOT* and one of the

three jobs the VE testified to, which the ALJ relied on to meet the burden at step five. The court

wrote:

> As noted, the VE testified that there are 104,000 document preparer positions
> available nationally, 7,000 final assembler positions available nationally, and
> 14,000 check weigher positions available nationally. The ALJ referenced this
> testimony collectively and concluded that Mr. Viverette "is capable of making a
> successful adjustment to other work that exists in significant numbers in the
> national economy." D.E. 13-2 at 32. But she apparently treated the three
> occupations (one of which we must here assume is off the table) cumulatively for
> purposes of the "significant numbers" determination, for she did not make any
> findings about how many jobs were available in the national economy for each of
> the occupations. In other words, the ALJ did not make a finding about how many
> final assembler or check weigher jobs were available nationally or whether the
> number of final assembler and check weigher jobs, either separately or
> cumulatively, constituted a significant number, absent the document preparer
> jobs.

*Viverette*, 13 F.4th at 1318.

*Viverette* is further distinguishable from the instant case in that the plaintiff in *Viverette*

raised issues with the job numbers the VE identified during cross-examination at the hearing.

Indeed, as noted by the court in *Viverette*,

> In Mr. Viverette's case the VE testified that there were 14,000 check weigher jobs
> nationally, but on cross-examination stated that this number included the total of
> sedentary unskilled jobs within the relevant SOC code. Significantly, she also said
> that she did not know whether the other *DOT* occupations within the SOC code
> required level 1 or level 2 reasoning or something higher. *See* D.E. 13-2 at 55–57.
> Because we have now held that there is an apparent conflict between level 3
> reasoning and a limitation to simple, routine, and repetitive tasks, and because the
> VE did not take the additional step mandated in *Goode* to estimate what portion of
> jobs within the relevant SOC code Mr. Viverette can perform, the 14,000 number
> for the check weigher position may be overstated. As a result, a "remand [here]
> would [not] be an idle and useless formality." *N.L.R.B. v. Wyman-Gordon Co.*,
> 394 U.S. 759, 766 n.6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969).

*Id.* at 1319. Here, there was no similar concern as to the jobs that remained after the document

preparer job was eliminated because Plaintiff did not question the VE regarding the specific jobs

he identified.

11

The Eleventh Circuit's decision in *Viverette* is not controlling authority, and the Fourth Circuit has not addressed the issues it raises. Courts within the Fourth Circuit that have considered *Viverette* have found it unconvincing and have distinguished the cases before it for reasons that also apply in this case. For example, in *Armstrong v. Commissioner of Social Security Administration*, the court chose not to apply the Eleventh Circuit's holding in *Viverette*, based on the following reasoning:

> [E]ven assuming there is a conflict with regard to the occupation of "cleaner," the representative occupations of "kitchen helper" (for which the vocational expert testified that there are 45,000 jobs nationally) and "hand packager" (for which the vocational expert testified there are 77,000 jobs nationally) remain available and, since Plaintiff "can perform at least one job that exists in significant numbers in the national economy, the ALJ properly concluded that Plaintiff is not disabled under the Act." *Richardson v. Berryhill*, 5:15-cv-173-RJC-DSC, 2019 WL 1354042, at *4 (W.D.N.C. Mar. 26, 2019); *see also McCall v. Saul*, 844 F. App'x 680, 681 (4th Cir. 2021) (citing with approval cases holding that 25,000 and 11,000 jobs nationwide, respectively, were significant); *Carpenter*, 2023 WL 7726706, at *5 n.3 ("In *Viverette*, the ALJ's error meant there were only 7,000 jobs available nationally. '[C]ourts around the country have generally held that at least 10,000 positions in the national economy is a 'significant number," and so, it is no surprise that the *Viverette* court found that the ALJ's finding was not based on substantial evidence. Here, Plaintiff would be left with 134,000 jobs in the national economy, a clear distinguishing fact.") (internal citations omitted).

*Id.*, C/A No. 3:23-124-MR-WCM, 2024 WL 463311, at *3 (W.D.N.C. Jan. 4, 2024), *adopted by* 2024 WL 460262 (Feb. 5, 2024).

Likewise, in *Carpenter v. Acting Commissioner of Social Security Administration*, C/A No. 5:23-37-KDB, 2023 WL 7726706, at *5 n.3 (W.D.N.C. Nov. 15, 2023), the court found *Viverette* distinguishable, noting:

> In *Viverette*, the ALJ referenced the VE's testimony collectively and "apparently treated the three occupations . . . cumulatively . . . for she did not make any findings about how many jobs were available in the national economy for each of the occupations." *Viverette*, 13 F.4th at 1318. Here, however, the ALJ's decision included a chart which identified each representative occupation and the number of jobs nationally for each. (AR 42). The ALJ expressly made a finding as to those numbers by finding that the VE had reasonably accounted for any conflicts between the *DOT* and RFC in reaching those numbers and using them, in

combination with other factors such as the claimant's age, education, work experience, and RFC to conclude that *Carpenter* had other work available to him and so he was not disabled. *Id.*

And the court reached a similar finding in *Ronnie K. v. O'Malley*, C/A No. 1:23-324, 2024 WL 3695205, at *12–13 (M.D.N.C. Aug. 7, 2024).

Plaintiff finds further fault with the ALJ's significant numbers assessment and cites *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004), in which the court specified factors it had previously "recognized should guide the ALJ's commonsense judgment, such as 'the level of [Allen's] disability; the reliability of the [VE's] testimony; the distance [Allen] is capable of travelling to engage in the assigned work; the isolated nature of the jobs; [and] the types and availability of such work.'" But Plaintiff has pointed to, and the court's research has revealed, no case in which this court or the Fourth Circuit has recognized these factors as persuasive. Accordingly, the court finds no error in the ALJ's decision not to consider the factors set forth by the Tenth Circuit in *Allen*.

Here, elimination of the document preparer position leaves 12,000 touch up screener jobs and 25,000 ampoule sealer jobs, both exceeding the 10,000-job threshold cited in *Armstrong* and *Carpenter*. The ALJ also included the following chart in his decision, reflecting his express consideration of the number of available jobs in each position:

| REPRESENTATIVE OCCUPATIONS | D.O.T # | STRENGTH/SKILL/SVP | Available in the NATIONAL economy |
|---|---|---|---|
| Touch Up Screener | 726.684-110 | Sedentary/unskilled/2 | 12,000 |
| Document Preparer | 249.587-018 | Sedentary/unskilled/2 | 90,000 |
| Ampoule Sealer | 559.687-014 | Sedentary/unskilled/2 | 25,000 |

The ALJ further concluded the VE's testimony did not conflict with the *DOT* but supplemented the DOT's information with his education, training, and professional experience. Based on this testimony, along with Plaintiff's age, education, and RFC, the ALJ determined that Plaintiff was

capable of adjusting to other work existing in significant numbers in the national economy. These findings closely align with those of the ALJ in *Carpenter*. Although Plaintiff argues the distinction in *Carpenter* is inconsequential—pointing out that the ALJ in *Viverette* had also identified the job numbers testified to in his decision, ECF No. 25 at 6 (citing *Viverette*, 13 F.4th at 1313)—the court notes a key difference. In *Carpenter* and the present case, the ALJ presented the job numbers in a chart format, explicitly recognizing the individual numbers for each identified job.

The magistrate judge appropriately noted that "[a]n ALJ need only identify one job existing in significant numbers in the national economy to meet the fifth step burden." [ECF No. 18 at 12 (citing 20 C.F.R. § 416.966(b)).] He correctly concluded that the ALJ found Plaintiff capable of performing jobs of touch up screener and ampoule sealer, with 12,000 and 25,000 positions existing in the national economy, respectively. Relying on precedent within the Fourth Circuit, the magistrate judge determined these constituted "significant numbers" as defined by the regulations and interpreted by the courts. *See* ECF No. 18 at 13–14 (citing *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979); *Hodges v. Apfel*, 2000 WL 121251 (4th Cir. 2000); *Best v. Berryhill*, 2017 WL 685601, at *4 (E.D.N.C. Feb. 3, 2017), *adopted by* 2017 WL 684184 (E.D.N.C. Feb. 21, 2017); *Kimberly M. v. Kijakazi*, 2023 WL 492794, at *8 (E.D. Va. July 11, 2023), *adopted by* 2023 WL 4977756 (Aug. 3, 2023) (collecting cases)).

The magistrate judge provided a well-reasoned explanation supporting his conclusion that substantial evidence supported the ALJ's step five finding, and that Plaintiff was not disabled under the Social Security Act. Thus, the court overrules Plaintiff's objections.

**CONCLUSION**

After a thorough review of the Report, the applicable law, and the record, the court

adopts the Report, ECF No. 18, as modified herein and affirms the Commissioner's decision.

IT IS SO ORDERED.

January 28, 2025                                                Sherri A. Lydon
Columbia, South Carolina                              United States District Judge